MOTLEY GREEN & CO. v. ELMENHORST et al.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. SALES (§ 166*)—CONTRACTS—PERFORMANCE.
    Where defendant ordered "Columbus No. 4 wheelbarrows manufactured by the K. & J. Manufacturing Company," plaintiff was not justified in delivering wheelbarrows made by another manufacturer of inferior quality.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 391–402; Dec. Dig. § 166.*]

2. SALES (§ 168*)—DUTY TO INSPECT—OMISSION.
    While a buyer is bound to inspect goods delivered, and failure to reject those not complying with the order waives the defense that the merchandise is not of the quality and character ordered, the rule does not apply if there has been no opportunity for inspection, or inspection has

---

been prevented by the acts of the seller, agreement of the parties, or custom of the trade.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. § 168.*]

3. CUSTOMS AND USAGES (§ 10*)—SALES—DELIVERY—QUALITY OF GOODS—IN-SPECTION.

Where, in an action for the price of certain barrows shipped to South American ports on defendant's order, defendant claimed that the barrows were not of the kind or quality ordered, but were of less value, while plaintiff claimed that defendant's failure to inspect the goods before loading on the steamship, pursuant to defendant's orders was a waiver of such defense and an acceptance of the goods, defendant was entitled to prove a custom of the trade by which inspection of merchandise under such circumstances was not required before shipment, but that the purchaser was entitled to rely on the seller's representations that the goods delivered were of the character ordered, and that in case they were not, the matter should be adjusted by payment of the value of the goods actually shipped.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 11–21, 35–39; Dec. Dig. § 10.*]

4. SALES (§ 359*)—ACTION FOR PRICE—COUNTERCLAIM—FAILURE OF PROOF.

Where plaintiff sued for the contract price of the last shipment of goods made under a contract, and defendant filed a counterclaim because of a deficiency in the quality of prior shipments which had been actually paid for, but did not prove that any damage had been sustained in consequence of plaintiff's failure to deliver the goods ordered, defendant was not entitled to recover on the counterclaim.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1056–1059; Dec. Dig. § 359.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Appellate Term.

Action by Motley Green & Co. against Frederick W. Elmenhorst and others, constituting the firm of Elmenhorst & Co. From a determination of the Appellate Term, affirming a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

George E. Morgan, for appellants Elmenhorst and others.
Charles N. Morgan, for the Trading Company and others.
George H. Corey, for Wm. R. Grace & Co.
Robert L. Luce, for respondent Motley Green & Co.

INGRAHAM, P. J. The action was brought for goods sold and delivered by the plaintiffs to the defendants.

The complaint alleges a sale by the plaintiffs to the defendants of certain wheelbarrows of the agreed value of $3,779.45; that the defendants had paid on account of the merchandise delivered the sum of $3,184.37; and that there remained due to the plaintiffs from the defendants the sum of $595.08, for which the plaintiffs demanded judgment. . The defense was that the merchandise ordered by the defendants was never delivered to or received by them, but that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

plaintiffs had shipped, on account of the defendants, merchandise of an inferior quality and a different manufacture from that ordered. The defense also alleges a counterclaim; that these defendants had ordered from the plaintiffs 816 wheelbarrows of a particular make and quality, to be crated and shipped on steamships sailing for South American ports; that the plaintiffs neglected to ship the goods as ordered, but shipped a different and inferior article of less market value, which fact was concealed from the defendants by the plaintiffs, who rendered bills for the merchandise ordered at the price specified, for which the defendants, under a mistake of fact and without any opportunity for examination and without any actual examination, paid; that the difference between the value of the wheelbarrows ordered by the defendants and the value of the wheelbarrows actually shipped under these orders by the plaintiffs was the sum of $874, for which the defendants demanded judgment. To this counterclaim the plaintiffs interposed a reply. The plaintiffs furnished a bill of particulars stating the number of wheelbarrows delivered and the date of each shipment. The last shipment was stated to be on August 17, 1905, which was the only shipment unpaid for, and for the contract price of the wheelbarrows shipped at that time the plaintiffs sought to recover.

Upon the trial the plaintiffs proved that the defendants ordered wheelbarrows by various written orders, which, upon their face, required the delivery of "Columbus No. 4 wheelbarrows" manufactured by the Kilbourne & Jacobs Manufacturing Company. It also appeared that, after the orders were received, the plaintiffs procured the wheelbarrows and had them crated and ready for delivery, when the defendants were notified of that fact, and the defendants then gave to the plaintiffs shipping orders, designating the steamer to which they were to be delivered. The defendants sought to show, both by cross-examination of the plaintiffs' witnesses and the witnesses called by the defendants, that these wheelbarrows were delivered directly by the plaintiffs to the steamship sailing for South America; that the defendants had no opportunity of examining the various shipments and did not in fact examine them; that as a matter of fact a large number of these wheelbarrows shipped by the plaintiffs upon these orders were not manufactured by Kilbourne & Jacobs Manufacturing Company and were not Columbus No. 4 wheelbarrows. This testimony was objected to and most of it excluded, to which the defendants excepted. The defendants also sought to prove that there was a universal custom in the trade in New York by which merchandise delivered under such orders for shipment to South American ports was not inspected at the steamer, but that the purchaser relied upon the representations of the vendor that the goods as ordered had been shipped, and that, in case it was subsequently ascertained that the merchandise shipped was not of the quality or description ordered, adjustments were made as to the price to be paid for the merchandise actually shipped by the vendor under such orders. This evidence was all objected to by the plaintiffs, and was excluded, to which the defendants excepted.

The crucial question in this case is as to the acceptance by the defendants of the merchandise ordered by them. It seems to be quite satisfactorily proved that the merchandise ordered by the defendants and shipped by the plaintiffs was not of the quality and character specifically ordered, and the plaintiffs were not entitled to recover unless an' acceptance of the merchandise as a compliance with the order was proved. Now, none of this merchandise was delivered directly to the defendants, but under the defendants' instructions was shipped upon vessels sailing for South American ports, crated by the plaintiffs, and delivered by them directly to the steamers. Upon the question of acceptance, I think proof of custom in the trade which was so general as to be known to both parties to this contract, so that they might be presumed to act in accordance with it, by which a delivery to a steamer was not to constitute an acceptance by the purchaser, would be competent evidence upon the question as to whether a delivery to a steamer was an acceptance of the merchandise delivered as a compliance with the orders. The orders required the delivery of specific merchandise manufactured by a specific manufacturer. The plaintiffs were not justified in delivering upon such orders merchandise made by another manufacturer of an inferior quality. The defendants, however, were bound to inspect the goods delivered, and a failure to reject the merchandise delivered as a compliance with the order would waive the defense that the merchandise was not of the quality and character ordered in an action for the purchase price; but the rule is equally well settled that where there is no opportunity of inspection, or an inspection is prevented by the acts of the vendor, or by an agreement between the parties, there is no acceptance that binds the purchaser; and I think an established custom of the trade, by which inspection of the merchandise ordered under the circumstances disclosed in this action is not to be had before shipment, and that the purchaser is entitled to rely upon the representation of the vendor that the goods delivered to the steamship for shipment are the goods of the character ordered, would be competent evidence upon the question as to whether a delivery to the steamship would be an acceptance by the purchaser which would preclude him from raising the question as to the liability to pay the contract price for the goods. Undoubtedly if the purchaser knew that the goods shipped were not the specific goods ordered, or if he had an opportunity to inspect them and failed to do so, in the absence of an agreement that such goods should not be inspected, and that the purchaser could rely upon the representations of the vendor as to the character and quality of the goods, he could not object to the payment of the contract price for the goods ordered and shipped'; but it seems to me that if there was no actual opportunity of inspection and no actual inspection, if such a general custom could be proved, the purchaser would not be bound to pay the contract price, but only for the market value of the goods furnished, and for that reason I think it was error to reject the evidence of the custom offered by the defendants, and that the defendants should have been allowed to prove, if they could, that such a custom existed in the

trade in New York, solely upon the question of the effect of the delivery of the goods to the steamship company.

I am inclined to think the court was right in dismissing the counterclaim for the goods that were actually paid for, as no damage was proved to have been sustained by the defendants in consequence of a failure of the plaintiffs to deliver the goods ordered; but the court directed a verdict for the plaintiffs for the full contract price of the goods shipped under the last order which had not been paid for. Whether the plaintiffs were entitled to recover the contract price, or the actual value of the goods shipped, was a question that the defendants were entitled to have submitted to the jury, if they could prove, either by proof or custom, or by other means, that the actual delivery of the goods to the steamship was not an acceptance of the goods under the contract.

For these reasons I think the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event.

SCOTT and MILLER, JJ., concur.

CLARKE, J. I dissent. The recovery was for the last shipment, $595.08. The undisputed proof is that the defendants did inspect this shipment, and after such inspection ordered it sent to their South American customers. Upon this proof, as the majority of this court hold that the dismissal of the counterclaim was right because no damage was proved to have been sustained by the defendants in consequence of a failure of the plaintiffs to deliver the goods ordered, the direction of a verdict was required, and the proof of custom was immaterial.

The judgment and order should be affirmed.

DOWLING, J., concurs.